UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MOHAMED ABDI HIRAD (4),<br>    aka Mo Trippin'<br>    ala Trippin'<br><br>Defendant. | CASE NO. 2:20-CR-139(4)<br><br>JUDGE SARAH D. MORRISON |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits its Sentencing Memorandum regarding defendant Mohamed Abdi Hirad, aka Mo Trippin', aka Trippin', whose sentencing is set for September 24, 2021, at 10:30 a.m.  For the reasons below, the United States recommends that the Court impose a term of incarceration at or below the properly calculated Guidelines range, followed by three years of supervised release.

### I.     BACKGROUND

In early 2019, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into possible cross-border firearms trafficking from Ohio into Canada.  On August 19, 2020, following an extensive investigation, a federal Grand Jury in this District returned an Indictment charging eleven defendants, including Defendant Hirad, in Count 1 with Conspiracy to Illegally Traffic Firearms, in violation of 18 U.S.C. § 371.  (*See United States v. O. Hassan*, et al., S.D. Ohio No. 2:20-cr-139, ECF No. 3, ¶ 1.)  And on November 19, 2020, a federal Grand Jury in the Southern District of Ohio returned an Indictment charging another defendant, Abdulwahab Sharif Mohamed Hassan, aka China, in Count 1 with Conspiracy to

Illegally Traffic Firearms, in violation of 18 U.S.C. § 371, and in Counts 2 and 3 with violations of the federal straw purchase law, 18 U.S.C. § 922(a)(6).

On December 13, 2020, the Court joined these two cases. Together, both Indictments lay out a detailed conspiracy to obtain and stockpile firearms in the Southern District of Ohio for the purpose of illegally transferring them and selling them in Canada. As the Indictments explain, the co-conspirators obtained the firearms through both legal and illegal means, stockpiled them, packed them into a void in the front compartment of Toyota Camrys, recruited female drivers to shepherd the Camrys into Canada, followed the drivers into Canada, and then arranged for the sale of the firearms in Canada. On December 10, 2020, the defendant pled guilty to Count 1 (conspiracy to traffic the firearms, 18 U.S.C. § 371).

## II. GUIDELINES RANGE/PRESENTENCE INVESTIGATION REPORT

The Probation Officer issued a final Presentence Report (PSR) on February 29, 2021. According to the PSR, the total offense level (TOL) is 29, which included the following:

- Base offense level: 18 (U.S.S.G. § 2K2.1(a)(5));
- Number-of-firearms enhancement: +6 (U.S.S.G. § 2K2.1(b)(1));
- Firearms trafficking: +4 (U.S.S.G. § 2K2.1(b)(5));
- Firearms left the U.S.: +4 (U.S.S.G. § 2K2.1(b)(6)(A)); and
- Less 3 points for acceptance of responsibility (U.S.S.G. § 3E1.1(b)).

The PSR further calculated the defendant's Criminal History (CH) Category as a I, with a resulting range of 87–108 months, which is statutorily restricted to 60 months. (PSR ¶ 97.) The Probation Officer did not identify any factors warranting departure from the guidelines range, though he did note some facts that might warrant a variance. (*Id.* ¶¶ 110–12.)

At this point, the defendant has one remaining objection to the PSR. The Government joins that objection. The PSR assessed the defendant with a base offense level of 18 because a number

2

of the guns seized as part of the conspiracy were equipped with Glock conversion switches; these conversion switches make an otherwise semiautomatic handgun into an automatic handgun. (*See, e.g.*, PSR ¶ 48.) The PSR accurately lays out the facts at play in this case. Nevertheless, the Government agrees that the base offense level should be a 12. The parties agreed in the context of the plea agreement that the base offense level for Mr. Hirad is a 12 in this case, and the Government intends to honor that agreement. The Government further submits that it has made the same contention with respect to the other defendants in this matter who have the same degree of culpability in the conspiracy as Mr. Hirad. Therefore, in the interest of fairness and in honor of the parties' agreement on this front, the Government objects to the PSR's base offense level of 18, and submits that 12 is the more proper base offense level with respect to Mr. Hirad.

If the Court agrees with the parties, the defendant's total offense level comes out to a 23. With a CH of I, this would net an advisory Guidelines range of 46–57 months.

### III. ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

Sentencing requires a determination of the applicable Guideline range, whether a departure is appropriate, and a consideration of the factors in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Under this analysis, the Government submits for the following reasons that a term of incarceration at or below the properly calculated Guidelines range, and a term of supervised release of three years, is fair.

### A. Nature and Circumstances: Transnational Gun Trafficking Is a Serious Crime that Puts Lives in Danger

A single straw purchase or illegal transfer of a firearm is "a callous and extreme risk to public safety." *United States v. Daniells*, No. 15-10150, 2017 WL 2256988, at *4 (D. Mass. May 23, 2017). Putting guns in the hands of people who shouldn't have them is a dangerous act. It

3

skirts the regulatory framework in place to track and monitor the sale and re-sale of dangerous guns. *See United States v. Arzu*, No. 5:07 CR 166, 2007 WL 2713908, at *3 (N.D. Ohio Sept. 17, 2007) (noting that "[t]he access to firearms through illegal channels is a problem for law enforcement of immense p[ro]portions," which, in part, justifies "a sentence at the highest level of the advisory Guidelines range"). And it entails a fundamental lack of care about what happens with the guns afterwards—or to the people they hurt or even kill.

The circumstances of this case are aggravated beyond a run-of-the-mill straw purchase. The conspiracy involved a large number of guns that were transferred to people who shouldn't have them; this amplifies the potential danger of an illegal firearms transfer. *See United States v. Elsaddique*, 252 F. App'x 992, 993 (11th Cir. 2007) ("[The defendant] used a false name to purchase three firearms. The act alone creates a significant danger to the public, which is only increased by the possibility that he made the purchase on someone else's behalf—someone who may have had a more serious and more recent criminal history."). This case also involves the transnational bulk transfer of firearms. When guns from America illegally flood into Canada, our country's issues with gun violence get passed onto a neighboring country that desperately does not want them. In the course of this case, the investigation further revealed that the mark-up for illegally purchased firearms often comes to between five and 25 times the retail value of the guns in the States. This represents a lucrative, difficult-to-track black market that is now creating dangers for Canadian citizens and law enforcement. Canadian authorities also made clear that the illegal proliferation of guns into their country was an ever-growing problem that they were working furiously to stem. Ohio, in fact, has become a priority for them, as the authorities in

Canada indicated that Ohio is the number one source state for firearms recovered in crimes in Canada.

The Government respectfully submits that a sentence at or below the properly calculated Guidelines range is appropriate given the serious nature of the conduct at issue and the aggravating factors present.

### B. History and Characteristics: The Court Should Take into Account the Defendant's Lack of Criminal History

The Government submits that the defendant's minimal criminal history is a point in his favor. Not only is the defendant in a CH I, but he has no prior convictions. He is young, and his lack of criminal record indicates that there is great hope that his conduct in this case will come to be an aberration in what all parties hope turns out to be an otherwise productive life.

### C. Need for Treatment

The PSR describes the defendant's struggles with mental health issues and, in particular, substance abuse. In light of the defendant's issues, the Government recommends that he receive as many services as the law will allow in prison—including mental-health treatment, any kind of substance-abuse treatment for which he is eligible, vocational training, any educational advancement he can obtain, and any other services that might help to address the defendant's past and ongoing struggles.

### D. Unwarranted Sentencing Disparities: The Defendant Was Heavily Involved in the Conspiracy

This is a large transnational firearms-trafficking crime, with guns that ended up in the hands of serious criminals in Canada. This case involved a large number of firearms. This defendant was an integral part of the conspiracy. As with all conspiracies, the success of the conspiracy is

5

reliant on the conspiracy members doing their parts, and the defendant's involvement in this conspiracy was extensive.  As provided in the PSR, the defendant's involvement included traveling to Canada on multiple occasions, helping to coordinate loads of firearms, compiling the firearms, and leasing a Toyota Camry.  (*See* PSR ¶ 53.)

Based on the above, the Government assesses the defendants in this case to fall into two tiers of culpability—an upper tier and a lower tier.  The Government views the defendant as falling at the top end of the lower tier.  The defendant's sentence should reflect the seriousness of the offense and the seriousness of the defendant's role in it.

### IV.    CONCLUSION

For these reasons, the Government submits that a term of incarceration at or below the properly calculated Guidelines range, and a term of supervised release of three years, would be sufficient but not greater than necessary to further the ends of sentencing.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/S. Courter Shimeall*
S. COURTER SHIMEALL (0090514)
KELLY A. NORRIS (0081254)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Courter.Shimeall@usdoj.gov
E-mail: Kelly.Norris@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served September 14, 2021, electronically upon all counsel of record for Defendant Mohamed Abdi Hirad, aka Mo Trippin', aka Trippin'.

*s/S. Courter Shimeall*
S. COURTER SHIMEALL
Assistant United States Attorney